# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES R. SAUL,

    **Plaintiff,**

vs.                                                                 No. CIV 02-0029 WJ/LCS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand (Doc. 9), filed July 1, 2002. The Commissioner of Social Security issued a final decision denying Plaintiff's application for supplemental security income. The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is not well-taken and recommends that it be **DENIED**.

## PROPOSED FINDINGS

    1.     Plaintiff, now fifty-two years old, filed his application for supplemental security income on March 5, 1998, alleging disability commencing in the Summer of 1985, due to a shoulder burn, arthritis, and severe bowel problems. (R. at 39; 63.) Plaintiff has a high school education, and past relevant work as a carpenter and laborer. (R. at 111.)

    2.     Plaintiff's application for supplemental security income was denied at the initial level on April 28, 1998, (R. at 21), and at the reconsideration level on February 4, 1999. (R. at 22.) Plaintiff appealed the denial of his application by filing a Request for Hearing by Administrative Law

Judge (ALJ) on March 30, 1999. (R. at 32-33.) The ALJ held a hearing on January 25, 2000, at which Plaintiff appeared without a representative. (R. at 105.)

3. The ALJ issued his decision on March 3, 2000, (R. at 17-19), analyzing Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F. 2d 1482, 1487 (10th Cir. 1993). At the first step of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the filing of his application. (R. at 17.) At the second step, the ALJ determined that Plaintiff had alleged impairments consisting of arthritis in multiple joints, residuals of a remote burn injury, and hypertension. (*Id.*) At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairments or combination of impairments had not met or equaled any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599. (R. at 18.) The ALJ found that Plaintiff was not credible and that he retained the residual functional capacity (RFC) for light work. (R. at 18.) Based on his RFC, the ALJ determined that Plaintiff was unable to perform his past relevant work as a carpenter or laborer. (R. at 18.) At step five, relying on the Grids, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 19.)

4. Plaintiff filed a request for review of the ALJ's decision, (R. at 13), and his non-attorney representative submitted a brief to the Appeals Council.[1] (R. at 103-104.) On October 5, 2001, the Appeals Council, after considering the contentions raised in the brief, denied the request for review. (R. at 8-9.) Hence, the decision of the ALJ became the final decision of the

---

[1] On March 27, 2000, Armando A. Cordoba, a non-attorney, was appointed to represent Plaintiff. (R. at 12.)

Commissioner for judicial review purposes. On December 14, 2001, the Appeals Council granted Plaintiff's request for extension of time to appeal to District Court. (R. at 4.) On January 10, 2002, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

**Standard of Review**

5. The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Sec'y of Health and Human Servs,* 961 F. 2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Sec'y of Health and Human Svcs.*, 985 F. 2d 1045, 1047 (10th Cir. 1993)(*quoting Broadbent v. Harris*, 698 F. 2d 407, 414 (10th Cir. 1983) (*citation omitted*)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F. 2d 802, 805 (10th Cir. 1988).

6. In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See Thompson v. Sullivan*, 987 F. 2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423(d)(1)(A)). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§

404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See id.*

**Administrative Record**

7. On March 3, 1998, Plaintiff wrote on a disability report that he was suffering from a shoulder burn, arthritis, and severe bowel problems. (R. at 63; 68.) He stated that he was not able to work because he could not "trust [his] body to function properly. " (*Id.*) With respect to household maintenance, Plaintiff wrote that he could do "anything that needs to be done when it needs to be done." (R. at 66.) Plaintiff worked in construction from 1970 to 1986, and took care of his elderly grandmother for room and board from 1986 to May 1997. (R. at 67-68.) When he worked in construction, Plaintiff read blue prints and layout, filled out reports, ordered materials, supervised construction crews, and operated heavy equipment. (R. at 67.) Plaintiff received treatment for his shoulder burn, a bowel examination, and treatment for his foot from Dr. Alexander, but the last time Plaintiff saw Dr. Alexander was in 1993 or 1994. (R. at 84.)

8. On an average day, Plaintiff would spend his time "getting [his] chores done." (R. at 69.) He stated that he was able to cook, shop for food, and read every day. (R. at 70-71.) Plaintiff was able to complete jigsaw puzzles, play pool, dance, play cards, go bowling, and drive. (R. at 72.) Sometimes Plaintiff had trouble flexing his hands and gripping. (R. at 81.) Plaintiff recounted that everything was harder and took a longer time to complete. (R. at 87.) Plaintiff was not taking any prescription medication for his condition, but did use the over-the-counter medications of Primatene Mist and Nicoderm. (R. at 83; 91.)

9. On April 27, 1998, Nicolas Nillo, M.D. performed a consultative examination. (R,.

at 95-98.) Plaintiff complained of a restricted range of motion due to the burn injury, arthritis with generalized stiffness in his hands, wrists, and knees, and constipation. (R. at 95.) Plaintiff had not sought treatment for the arthritis and last saw a doctor for the other conditions in 1992. (*Id.*) Plaintiff reported that he had constant pain in his left knee, especially after walking one half mile or standing or walking for more than one hour. (R. at 96.) He was not able to run, lift heavy weights, nor dance. (*Id.*) Plaintiff reported that he had to wear a knee brace when lifting more than forty pounds, climbing, or stooping, and had difficulty getting back up from stooping, squatting or kneeling. (*Id.*)

10. Physical examination was unremarkable except for a hypopigmented burn scar over the left anterior shoulder area and elevated blood pressure. (R. at 96-97.) Both hands could be fully extended, fists made, and fingers opposed without any apparent difficulty. (R. at 97.) Grips were symmetrical and within normal limits. (*Id.*) Moderate bony enlargement was present on the fingers, but there was no restriction of range of motion. (*Id.*) There was no indication of intrinsic joint pathology or crepitus. (*Id.*) There was a mild restriction of elevation of the right shoulder. (*Id.*) There was no proximal muscle wasting and limbs were essentially symmetrical. (*Id.*) Tenderness was reported on the joint margins of the left knee and slight discomfort with varus stress but there was no laxity. (R. at 97.) Patellar grinding was negative and there was no evidence of synovitis, restriction of range of motion, deformity, or intrinsic joint pathology. (*Id.*) There were no abnormalities of the spine and stance and gait were within normal limits. (*Id.*) Plaintiff reported that he smoked thirty cigarettes a day. (R. at 98.)

11. Dr. Nillo's clinical impression was mild osteoarthritis of the hands, without objective evidence of significant functional impairment of the use of the hands, subjective evidence of degenerative joint disease of the left knee without a gait disorder, and markedly elevated blood

5

pressure without symptoms. (R. at 97.) Dr. Nillo opined that Plaintiff had no lifting restriction, and no limits on his ability to sit, stand, walk, reach, feel, speak, handle, hear, or travel. (R. at 101-102.)

12. On May 6, 1998 notice of denial of his application, Plaintiff was advised that he had a right to have someone help him with his appeal. (R. at 23-25.) On February 5, 1999, in the letter denying Plaintiff's request for reconsideration, the Commissioner advised Plaintiff that he had a right to be represented. (R. at 29-31.) On May 3, 1999, Plaintiff wrote that he had been unable to find an attorney to represent him, but that he still wanted to have a hearing before an ALJ. (R. at 33.) In a May 24, 1999 cover letter for the Notice of Hearing, the Hearing Office Chief advised Plaintiff of his right to representation by a lawyer or another person, and also referred Plaintiff to an enclosed leaflet entitled "Social Security and Your Right to Representation" and a list of groups that could help Plaintiff find a representative. (R. at 36.) In the Notice of Decision, dated March 3, 2000, the ALJ advised Plaintiff that he had a right to have an attorney or other person represent him on appeal. (R. at 14-16.)

13. On January 13, 2000, Plaintiff stated that he visited the Deming Rural Health Clinic for treatment of an ear infection that was unrelated to his allegedly disabling condition. (R. at 92.) Plaintiff was prescribed antibiotics for the ear infection. (R. at 93.)

14. At the January 25, 2000 hearing, Plaintiff appeared *pro se*. (R. at 105.) The ALJ reminded Plaintiff that he had a right to have a representative with him. (R. at 107-108.) Plaintiff testified that every attorney he had called told him they preferred to handle cases from the beginning and that they did not want to get involved after the claim had been denied administratively. (R. at 108.) Plaintiff stated that he had no medical records, other than those relating to the ear infection treatment. (R. at 109.)

15. Plaintiff drove the sixty miles to the hearing in a standard transmission vehicle. (R. at 110.) Plaintiff stopped working as a carpenter in 1985 due to the shoulder burn. (R. at 111.) It took about a year for the burn to heal, and then Plaintiff stayed home and took care of his elderly grandmother for ten years. (R. at 111-112.) Plaintiff cooked, did the laundry, and helped feed his grandmother, but visiting nurses came in to bathe her. (R. at 112.) After his grandmother moved to a nursing home in 1996, Plaintiff had been unable to find any work. (R. at 112-113.)

16. Plaintiff testified that he was able to lift a twenty-pound bag of cat food and that he was in constant pain. (R. at 113.) Plaintiff could walk or stand for an hour, and sit for up to two hours at a time. (R. at 114.) Plaintiff was able to bend over at the waist to pick things up, but he had difficulty gripping things. (R. at 114-115.) Plaintiff was able to get along with others and had no trouble understanding items such as news reports. (R. at 115.) Plaintiff's pain was worse with cold, wet weather, but his vision and hearing were fine. (R. at 116.)

17. On a typical day, Plaintiff would get up at about 9:00 a.m., feed and water his cats, and help his mother tend to her dogs and do the laundry. (R. at 117-118.) In the afternoon, Plaintiff would read the paper, work crossword puzzles, and read. (R. at 118.) Sometimes Plaintiff would play pool with friends. (R. at 119.) Plaintiff had finished his ear infection antibiotics and was only on steroid nose spray at the time of the hearing. (*Id.*) In response to the ALJ's questioning, Plaintiff testified that he could perform the jobs of monitor, greeter, and parking lot attendant. (R. at 120-121.)

**Discussion**

18. Plaintiff contends that the ALJ failed to insure that Plaintiff understood his right to representation at the hearing, failed to develop the record, and that the ALJ's step five finding is not

7

supported by substantial evidence.

19.   Plaintiff cites to a Seventh Circuit case in support of his contention that the ALJ should have done more to insure that Plaintiff understood his right to representation. *See Binion v. Shalala*, 13 F. 3d 243 (7th Cir. 1994). However, in a strikingly similar case, where the ALJ advised the Plaintiff of her right to representation before the hearing and written notice was also given, the Tenth Circuit held that:

> While the customary and better practice would seem to be to place both the advisement and the waiver on the record during the hearing, neither the pertinent statute, see 42 U.S.C. § 406(c), nor the regulations, see 20 C.F.R. § 404.1706, nor our previous cases require any more advisement than was given in this case.

*Carter v. Chater*, 73 F. 3d 1019, 1023 (10th Cir. 1996) (*citing Garcia v. Califano*, 625 F. 2d 354, 356 (10th Cir.1980)).

20.   The record establishes that the ALJ advised Plaintiff of his right to counsel at the beginning of the hearing and that Plaintiff stated that he had been unable to locate an attorney willing to take his case. (R. at 107-108.) Plaintiff wrote a letter to the SSA on May 3, 1999, stating that he had been unable to find an attorney, but requesting that his hearing before the ALJ go forward. (R. at 33.) On the May 6, 1998 notice of denial of his application, Plaintiff was advised that he had a right to have someone help him with his appeal. (R. at 23-25.) On February 5, 1999, in the letter denying Plaintiff's request for reconsideration, the Commissioner advised Plaintiff that he had a right to be represented. (R. at 29-31.) On May 3, 1999, Plaintiff wrote that he had been unable to find an attorney to represent him, but that he still wanted to have a hearing before an ALJ. (R. at 33.) In a May 24, 1999 cover letter to the Notice of Hearing, the Hearing Office Chief advised Plaintiff of his right to representation by a lawyer or another person and also referred Plaintiff to an enclosed

8

leaflet entitled "Social Security and Your Right to Representation" and a list of groups that could help Plaintiff find a representative. (R. at 36.)

22. The record establishes that Plaintiff testified in an articulate manner, read and worked crossword puzzles. (R. at 118.) In his construction job, Plaintiff read blue prints, wrote reports, ordered materials, and supervised others. (R. at 67; 76.) Plaintiff even wrote a letter requesting that the hearing go forward, even though he had been unable to secure counsel. (R. at 33.) These factors indicate that Plaintiff is intelligent and understood his right to representation, yet decided, and affirmatively requested, to proceed with the hearing on his own.

22. Plaintiff claims that he was prejudiced by the lack of representation because a representative would have requested an examination by an orthopedist, examined Plaintiff after the ALJ's questions regarding Plaintiff's ability to work, and elicited additional testimony about Plaintiff's impairments. As more fully discussed below, the ALJ was not obligated to obtain a consultative report from an orthopedist and based his opinion on Dr. Nillo's diagnosis, and not Plaintiff's testimony at the hearing about his ability to perform certain jobs. (R. at 18.) Moreover, the ALJ questioned Plaintiff at length about his alleged impairments and did not limit Plaintiff's opportunity to testify. (R. at 113-119.) "The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." *Hawkins*, 113 F. 3d at 1168. Plaintiff was adequately advised of his right to representation, yet chose to proceed with the hearing on his own. The ALJ properly insured that Plaintiff understood his right to representation under the controlling standard of *Carter v. Chater*, 73 F. 3d 1019 (10th Cir. 1996) and te record does not demonstrate prejudice.

23. Plaintiff argues that the ALJ failed in his duty to develop the record because the

9

consultative examination was performed by a medical doctor who did not specialize in orthopedics and failed in his duty to develop the record because Dr. Nillo is a psychiatrist and his professional qualifications were not included in the record. An ALJ has a responsibility in the nonadversarial social security setting "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F. 3d 359, 360-61 (10th Cir.1993). The responsibility to develop the record may require the ALJ to order a consultative examination. *See Hawkins v. Chater*, 113 F. 3d 1162, 1166 (10th Cir.1997). In deciding whether the ALJ erred in not ordering a consultation, the Court must consider whether there is sufficient medical evidence in the record so that the ALJ can make an informed decision without a consultative examination. *Matthews v. Bowen*, 879 F. 2d 422, 424 (8th Cir. 1989).

24. The regulations provide that a consultative examination will be purchased only from a qualified medical source. *See* 20 C.F.R. § 416.919g(a). "Qualified" is defined as "currently licensed in the State and hav[ing] the training and experience to perform the type of examination or tests we request." 20 C.F.R. § 416.919g(b). The medical source must also have the equipment required to provide an adequate assessment and record of the existence and level of severity of [the] alleged impairments. *Id*.

25. Regardless of his specialty, Dr. Nillo was a medical doctor. (R. at 95; 98.) A licensed medical doctor is qualified to perform a physical examination under the regulations. *See* 20 C.F.R. § 416.91(a)(1). Dr. Nillo's examination covered all of Plaintiff's alleged impairments and is consistent with the record as a whole. While it is true that the record does not include a statement of Dr. Nillo's professional qualifications, his report states that he is a medical doctor. (R. at 95; 98.) Plaintiff admits as much in his brief. (Pl.'s Mem. in Supp. of Mot. to Reverse and Remand for a

Rehearing at 6.) Omission of Dr. Nillo's professional qualifications was at most harmless error because it did not materially affect the outcome of the case. Dr. Nillo's consultative examination and report were adequate to assess Plaintiff's condition. The ALJ did not err in failing to obtain a consultative examination from an orthopedic specialist. Omission of Dr. Nillo's professional qualifications from the record did not affect the outcome of the case.

26. Plaintiff argues that the ALJ erred in applying the Grids and should have consulted a vocational expert. After determining that Plaintiff was unable to perform his past relevant work, the ALJ proceeded to step five and found that the Grids[2] directed a finding the Plaintiff was not disabled. (R. at 19.) At step five, the burden of proof shifts to the Commissioner to show that the claimant retains the residual functional capacity to do work which exists in the national economy. *Thompson v. Sullivan*, 987 F. 2d 1482, 1487 (10th Cir. 1993). In certain cases, at the fifth step, the ALJ may rely solely on the Grids.

27. The Grids assume that a claimant's sole limitation is lack of strength, also known as an exertional impairment. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00 (e)(2). In a case such as this, where a claimant presents evidence of both exertional and non-exertional impairments, the ALJ must make findings on how much a claimant's work ability is further diminished by the non-exertional limitations. *Id.* If the non-exertional limitations are significant enough to further reduce work capacity, the ALJ may not rely solely on the Grids but must instead give full consideration to all relevant facts, including expert vocational testimony if necessary, in order to determine whether a claimant is disabled. *See Channel v. Heckler*, 747 F. 2d 577, 583 (10th Cir. 1984). In assessing the extent to which a claimant's ability to work is eroded by his non-exertional impairments, the ALJ

---

[2] 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00 (e)(2).

11

will normally need to obtain the testimony of a vocational expert. *See Hargis v. Sullivan*, 945 F. 2d 1482, 1491 (10th Cir. 1991).

28. The ALJ did not consult vocational expert, but relied on the Grids at step five, after he determined that Plaintiff had the residual functional capacity for light work which was not limited by non-exertional impairments. (R. at 18.) Contrary to Plaintiff's assertion that the ALJ relied on Plaintiff's testimony of his ability to perform certain jobs to assess Plaintiff's RFC, a careful reading of the decision shows that the ALJ relied on Dr. Nillo's consultative examination and the record as a whole to determine Plaintiff's RFC. (*Id.*) The ALJ's RFC determination is supported by substantial evidence. Because Plaintiff's non-exertional impairments did not restrict him from performing the full range of light work, the Grids to satisfied the Commissioner's burden at step five. *See Glass v. Shalala*, 43 F. 3d 1392, 1396 (10th Cir.1994). A vocational expert was not required in this case and the ALJ properly relied on the Grids to meet the Commissioner's burden at step five.

29. The Commissioner's decision that Plaintiff is not disabled at step five is supported by substantial evidence and is in accordance with the law.

**RECOMMENDED DISPOSITION**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 9), filed July 1, 2002, be **DENIED.**

Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102, written objections to such proposed findings and recommendations. A party must file any

12

objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**